In re Joseph Donald **EDWARDS** and Teri Le Edwards, Debtors.

Joseph Donald **EDWARDS** and Teri Le Edwards, Plaintiffs/Debtors,

v.

**INTERNAL REVENUE SERVICE, Defendant.**

Bankruptcy No. 586–922.
Adv. No. 586–0280.

United States Bankruptcy Court, N.D. Ohio.

June 17, 1987.

William A. Nome, Kent, Ohio, for debtors.

Richard J. French, Asst. U.S. Atty., Cleveland, Ohio, Joanne C. Rutkowski, U.S. Dept. of Justice, Washington, D.C., for defendant.

## FINDING AS TO DISCHARGEABILITY OF FEDERAL INCOME TAX LIABILITY

HAROLD F. WHITE, Bankruptcy Judge.

The parties have stipulated to all material facts regarding the dischargeability of federal income tax liability for which an erroneous, but timely, tax return was filed more than two years before the chapter 7 petition was filed. The matter has been submitted to the court upon briefs.

### I. STATEMENT OF FACTS

On or before April 15, 1983 the debtors filed a tax return for the tax year ending December 31, 1982. On October, 1984 the IRS made an audit assessment of $296.11 for additional taxes for the 1982 tax year. In early 1985 the debtors filed an amended tax return for the 1982 tax year showing additional income, and in March of 1985 the IRS conducted an additional audit assessment. On or about May 28, 1985, within three years after the return was filed, the debtors executed a consent to extend time to assess taxes until December 31, 1986 for the 1982 tax year.

On July 7, 1986 the debtors filed a joint petition under chapter 7 of title 11 of the United States Code. On or about July 21, 1986 the IRS assessed an additional tax of $3,310.12 for the 1982 tax year. On Octo-ber 31, 1986 the IRS filed its proof of claim in this amount.

### II. ISSUE

Whether a debt arising from a tax liability assessed post-petition pursuant to an agreement of the parties on income earned in tax year ending December 31, 1982 for which a timely, but erroneous, return had been filed more than two years before the petition was filed is a priority tax pursuant to § 507(a)(7)(A)(iii), and hence, nondischargeable pursuant to § 523(a)(1)(A)?

### III. DISCUSSION OF LAW

As this is a case to a large extent of proper statutory construction, an examination of which statutory language properly applies is a necessary starting point. The Bankruptcy Code has undergone two important revisions in the last few years. Certain revisions have required subsequent conforming amendments to correct improper cross references where sections were renumbered.

Joseph and Teri Edwards filed their joint chapter 7 petition on July 7, 1986. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, was enacted July 10, 1984 and became effective for cases after October 7, 1984. It added a new category of priority claims to § 507 of the Bankruptcy Code. Pub.L. No. 98–353 at § 350. As a result of this revision, § 507(a)(5) and § 507(a)(6) were renumbered as § 507(a)(6) and § 507(a)(7). *Id.* This version of § 507 is applicable to the instant case. *Id.* at § 523(a). However, the cross reference to former § 507(a)(6) contained within § 523(a)(1)(A) declaring priority debts of this kind to be nondischargeable was not renumbered to reflect this new designation. Accordingly, § 523(a)(1) states:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title, whether or not

a claim for such tax was filed or allowed;

  (B) with respect to which a return, if required—

  (i) was not filed; or

  (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

  (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

....

11 U.S.C. § 523(a)(1) (Collier 1986) (editorial note included). Redesignated § 507(a)(7) states in pertinent part:

  (a) The following expenses and claims have priority in the following order:

....

  (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

  (A) a tax on or measured by income or gross receipts—

  (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

  (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

  (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(c) [sic] of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case; ...

11 U.S.C. § 507(a)(7)(A) (Collier 1986).

On October 27, 1986 the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 was enacted, and became effective thirty days after the date of enactment. Bankr.Serv. (L.Ed.), *Current Awareness Alert,* Nov., 1986 at 78 and H.R. 5316, 99th Cong., 2d Sess. § 302(a), 132 Cong.Rec. H5982 (daily ed. Aug. 12, 1986). Section 523(a)(1)(A) was amended to correct the cross reference to § 507(a)(6), changing it to § 507(a)(7). 3 *Collier On Bankruptcy,* ¶ 523.06[2] at 523–19 n. 3b (15th ed. 1987). The failure to redesignate this cross reference in the 1984 amendments was merely an oversight, and the proper reference in § 523(a)(1) should be to § 507(a)(7). *Easton v. United States (In re Easton),* 59 B.R. 714, 716 n. 1 (Bankr.C.D.Ill.1986). The debtors would have this court take a strict constructionist attitude. They argue that even if the court found that the tax at issue was a priority tax under § 507(a)(7)(A)(iii), § 523(a)(1)(A) does not require that it be excepted from discharge; § 523(a)(1)(A) excepts from discharge only § 507(a)(6) priority tax claims. This would create a new category of dischargeable debts for layaway deposits not exceeding $900, a result never intended by the legislature. It was the clear intent of congress to except such debts from discharge. *See Easton,* 59 B.R. at 716 n. 1 and 3 *Collier On Bankruptcy* at 523–19 n. 3b.

The debtors further argue that if the court adopts a liberal construction of § 523(a)(1)(A), it should also do so for § 507(a)(7)(A)(iii) and hold that the reference to § 523(a)(1)(B), establishing a two-year period of limitations for late-filed returns, contained within § 507(a)(7)(A)(iii), operates to preclude a tax priority claim for a taxable year ending more than two years before the petition filing date. Otherwise, the debtors argue, the debtor could be penalized for filing a timely return. The debtor fails to distinguish between the two clear classes of tax claims in a chapter 7 case: priority tax claims which are nondischargeable, and tax claims which are not priority claims, but which are nondischargeable. The two categories of tax claims, nondischargeable priority claims and nondischargeable claims, are not mutu-

ally exclusive. The confusion arises from the following language of § 507(a)(7)(A)(iii): "allowed unsecured claims of governmental units ... [for income tax] *other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(c)* [sic] ... [are entitled to the seventh priority]." 11 U.S.C. § 507(a)(7)(A)(iii) (Collier 1986) (emphasis added). The "tax of a kind specified" in § 523(a)(1)(B) or § 523(a)(1)(C), *inter alia,* is a tax for which a return was untimely filed more than two years before the petition was filed. The debtors cite in support of their interpretation the case of *Doss v. United States (In re Doss),* 42 B.R. 749 (Bankr.E.D.Ark.1984). In *Doss* the debtors filed a late tax return for tax years of 1976, 1977 and 1978 more than two years before they filed their chapter 7 petition, but the late return was filed less than three years before the petition was filed, making the taxes for those tax years still assessable by the IRS. *Cf.* 11 U.S.C. § 523(a)(1)(B)(ii), *with* 11 U.S.C. § 507(a)(6)(A)(iii) and 26 U.S.C. § 6501(a). In reading together all the provisions of the Code in order to give them proper effect, the court held that the taxes for the tax years of 1976, 1977 and 1978 were not entitled to priority status and were dischargeable. 42 B.R. at 754. "To do otherwise would ... render ineffective Section 523(A)(1)(B)(ii) or make it meaningless in a fact situation such as the one presented here." *Id.* However, the *Doss* decision is distinguishable since the tax claim at issue arose from an untimely filed tax return; the tax return in the instant case was timely filed, and outside the parameters of § 523(a)(1)(B)(ii). *See In re Treister,* 52 B.R. 735, 738 n. 6 (Bankr.S.D. N.Y.1985).

The government relies upon *Massoni v. Internal Revenue Service (In re Massoni),* 20 B.R. 416 (Bankr.D.Kan.1982). In *Massoni* the court only focused upon whether the tax was still assessable under the relevant law, and made reference to what these debtors must deem the "apparent conflict" in § 507(a)(6)(A)(iii) [§ 507(a)(7)(A)(iii)]. Moreover, the tax claim arose from a timely filed tax return. Although *Massoni* certainly supports the government's interpretation of the effect of § 507(a)(7)(A)(iii), a

better case for its position is the *Treister* case. In *Treister* the tax returns were timely filed more than two years before the petition was filed, but the tax was still assessable at the time the petition was filed. 52 B.R. at 738. The taxes were still assessable pursuant to § 6503(a) of the Internal Revenue Code. Consequently, § 507(a)(6)(A)(iii) [§ 507(a)(7)(A)(iii)] applies, making the tax a priority claim, and pursuant to § 523(a)(1)(A), the claim is nondischargeable as well. *Id.* The debtor's reliance on the *Doss* decision was misplaced; the tax at issue was not of a kind specified in § 523(a)(1)(B) or § 523(a)(1)(C), and if assessable, it is rendered nondischargeable. *Id.* at 738 n. 6. *See also, Cooper v. Internal Revenue Service (In re Cooper),* 48 B.R. 420, 421 n. 2 (Bankr.C.D. Ill.1985) (none of the § 523(a)(1) exceptions to § 507(A)(6)(A)(iii) [§ 507(a)(7)(A)(iii)] apply; even if one did, the tax would still be nondischargeable, but it would not be entitled to priority) and *Hunt v. United States (In re Hunt),* 59 B.R. 718 (Bankr.D.Me. 1986) (taxes arising from tax years in which timely returns were filed more than two years before petition filed, but still assessable, are nondischargeable). The *Triester* decision is supported by the legislative history to these sections. "The tax [priority] provision underwent substantial revision from its original form in H.R. 8200.... [and § 507(a)(7)] represents a modification of the tax priority provisions found in the original House bill and the Senate amendment." 3 *Collier On Bankruptcy* at ¶ 507.04[7][a], 507–38 to 507–39 (footnote omitted). The House version of § 523(a)(1) would have excepted from discharge taxes reported on a fraudulent return or willfully evaded by the debtor, or which were due less than *one year* before the petition was filed, but were not reported. H.Rep. No. 595, 95th Cong., 1st Sess. 363 (1977). The Senate version would have excepted from discharge taxes arising from late returns filed less than *three* years before the petition was filed. S.Rep. No. 989, 95th Cong., 2d Sess. 78 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. Apparently, what emerged was a compro-

mise of two years. *See* 11 U.S.C. § 523(a)(1)(B)(ii).

Much of § 507(a)(7) conformed to the views held by the Senate Finance Committee. *Rosenow v. Illinois (In re Rosenow)*, 715 F.2d 277, 280 n. 5 (7th Cir.1983). The insight of the Senate Finance Committee as to the nondischargeability of priority taxes can be very illustrative of the intent of the legislature in enacting § 507(a)(7) and § 523(a)(1):

> Taxes that are excepted from discharge under S. 2266 (as well as under present law) include claims against the debtor which receive priority in distribution of property of the estate.

> Certain prepetition tax liabilities are not given priority in distribution from property of the estate, but under S. 2266 would survive as liabilities of the debtor after the case. This category includes (1) taxes for which the debtor had not filed a return as of the bankruptcy petition, or for which a return had been filed beyond its due date but within 3 years before the petition, and (2) taxes with respect to which the debtor filed a fraudulent return, or as to which he fraudulently attempted to evade or defeat any tax.[19] ...

....

[19] The bankruptcy policy for this treatment is that it is *not fair to penalize private creditors of the debtor by paying out of the "pot" of assets in the estate tax liabilities arising from the debtor's deliberate misconduct. On the other hand, the debtor should not be able to use bankruptcy to escape these kinds of taxes. Therefore, these taxes have no priority in payment from the estate but would survive as continuing debts after the case.* (Not giving priority to a debt means that the creditor can still collect part or all of the debt from the estate, but the creditor must do so as a general creditor, sharing pro rate with other general creditors.)

Committee on Finance, S.Rep. No. 1106, 95th Cong., 2d Sess. 22 (1978) [hereinafter "S.Rep. No. 1106"] (emphasis added). From this passage it becomes clear that the legislative intent is to treat tax claims arising from late-filed or fraudulent returns as nondischargeable, but general unsecured claims, and to treat tax claims arising from current returns, or recently assessed or assessable tax returns, as nondischargeable, but unsecured claims with priority treatment. In balancing the interests of the general creditors, the debtor and the tax collector, the treatment of tax claims was designed to give "governmental units a priority claim on assets of the debtor's estate for certain taxes which have not grown so 'stale' as to constitute an unjustifiable burden on general unsecured creditors (who may have extended new credit to the debtor since the tax liability arose)." S.Rep. No. 1106 at 5.

With the foregoing analysis in mind, the court concludes that the tax at issue in the present case is a nondischargeable debt, entitled to priority treatment pursuant to § 507(a)(7)(A)(iii). On May 6, 1987 the parties stipulated to all material facts. On or before April 15, 1983 the debtors timely filed a tax return for the tax period ending December 31, 1982. In October of 1984 the IRS made an audit assessment for 1982 of $296.11, and in March of 1985, an additional assessment was begun. On May 28, 1985 the debtors filed an amended tax return for the 1982 tax year and consented to an extension of time for the IRS to assess additional tax until December 31, 1986. On July 7, 1986 the debtors filed their chapter 7 petition. On July 21, 1986 the IRS assessed an additional tax of $3,310.12 for the 1982 tax year. Section 507(a)(7)(A)(iii) grants unsecured claims of governmental units priority treatment for income taxes not assessed, but assessable, after the commencement of the case, either assessable under applicable law or by agreement. The period of limitations on assessments of income tax is three years after the return is filed, unless the IRS and the taxpayer have consented in writing to an assessment after such time. 26 U.S.C.A. § 6501(c)(4) (West 1967). The debtors and the IRS agreed to such an extension within the original three-year period, and the tax was properly assessable at the time the petition was filed, and properly assessed before the expiration of the extension. As well as having priority status as an unsecured claim, it is nondischargeable. 11 U.S.C. § 523(a)(1)(A).

## IV. CONCLUSION

When congress amended the Bankruptcy Code by the 1984 amendments to add an additional class of priority claims and re-number priority claims for consumer deposits on layaway goods and services, it did not intend to accord this renumbered priority class a nondischargeable status. However, congress failed to renumber the cross reference to § 507(a)(7) in § 523(a)(1). If § 523(a)(1) is read in keeping with the original, and presumably continuing, legislative intent, it must be read as containing the proper cross reference and proper substantive law.

If § 523(a)(1)(A) is so construed to give proper effect to its intended purpose, priority tax claims now accorded seventh priority are nondischargeable debts. The limitations as to seventh priority claims not being tax claims which are nondischargeable pursuant to § 523(a)(1)(B) or § 523(A)(1)(C) should be made to give it its simple and intended meaning. These nondischargeable debts are not accorded priority treatment, however, they remain nondischargeable. Even though an untimely filed tax return filed more than two years before the petition date gives rise to a dischargeable tax claim, a tax claim which arises from a timely filed tax return filed more than two years before the petition date, or even more than three years before the petition date, is a nondischargeable tax claim, entitled to priority treatment, if the tax is still assessable as of the petition date.

A separate order in accordance with this Finding will be entered hereon.